UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHARLES MURPHY,

    Plaintiff,

v.                                       Case No: 6:16-cv-1987-Orl-22TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## REPORT AND RECOMMENDATION

Plaintiff, Charles Murphy brings this action pursuant to the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of Defendant, the Commissioner of the Social Security Administration denying his claim for supplemental security income under the Act. Upon a review of the record, I respectfully recommend that the Commissioner's final decision in this case be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g) and 42 U.S.C. §1383(c)(3).

### Background[1]

Plaintiff filed for benefits[2] on July 11, 2012, alleging disability commencing on January 1, 2009 (Tr. 191-200, 208), later amended to July 11, 2012 (Tr. 40). He claimed disability due to diabetes, high blood pressure, migraine headaches, shoulder and back pain, weakness in legs and arms, chest pains, blurry vision, severe vertigo, depression,

---

[1] The information in this section is taken from the parties' joint memorandum (Doc. 16).
[2] Plaintiff filed an application for disability insurance benefits, alleging disability commencing on January 1, 2009 (Tr. 187-190). He last met the insured status requirements of the Social Security Act on September 30, 2009 (Tr. 208). At the administrative hearing, Plaintiff amended his alleged onset date to July 11, 2012, the date he filed for supplemental security income benefits (Tr. 40). As such, the ALJ dismissed Plaintiff's application for disability insurance benefits (Tr. 21).

anxiety, panic attacks, mood swings, anger issues, and memory and concentration problems (Tr. 212). Plaintiff's application was denied initially and on reconsideration, and he requested and received a hearing before an administrative law judge ("ALJ") (Tr. 124-129, 142-146, 37-69, 147-148). On March 19, 2015, the ALJ found Plaintiff not disabled (Tr. 18-36). On the date of the ALJ's decision Plaintiff was fifty-three years old, with a tenth grade education, and prior work experience as a delivery driver, tow truck operation and security guard (Tr. 191, 213-214).

On September 22, 2016, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 1-7). Consequently, the ALJ's decision is the Commissioner's final decision. Plaintiff brings this action after exhausting his available administrative remedies. The dispute is fully briefed, and has been referred to the undersigned for a report and recommendation.

## The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process and set down in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner to prove that other jobs exist in the national economy that the claimant can perform. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

Here, the ALJ performed the required sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date (Tr. 23). At step two, the ALJ determined that Plaintiff had the severe impairments of diabetes mellitus, vertigo, low back pain, coronary artery disease, tobacco abuse, anxiety, and depression (20 CFR 416.920 (c)) (Tr. 23). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 24). Next, the ALJ decided that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b) and 416.967(b), "except he requires a sit/stand option every 30 minutes, with no exposure to unprotected heights or dangerous machinery at a time with only occasional contact with the public." (Tr. 26). At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work (Tr. 30). Based on the testimony of a vocational expert, the ALJ determined at step five that, considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (Tr. 30), and thus concluded that Plaintiff was not under a disability from July 11, 2012, through the date of the decision (Tr. 31).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a

conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (*per curiam*); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

Plaintiff complains that the ALJ did not apply the correct legal standard to the opinion of a consultative examiner Alvan W. Barber, M.D. As summarized by the parties in their brief, on December 9, 2014, Plaintiff presented to Dr. Barber for a consultative examination (Tr. 530-537). Dr. Barber noted that Plaintiff entered the examination room with the use of a walking stick (Tr. 532). Physical examination of Plaintiff's back revealed positive low paravertebral muscle spasms and positive point tenderness in the right and left sacroiliac joint (Tr. 535), and the doctor noted full muscle and grip strength throughout, including Plaintiff's hands bilaterally (Tr. 534). Straight leg raising tests were negative bilaterally. Id. Plaintiff was unable to tandem walk, walk on his toes, or walk on his heels (Tr. 535-536). Dr. Barber noted that Plaintiff walked with a slow, guarded gait with his walking stick (Tr. 536).

Dr. Barber completed a Medical Source Statement of Ability to Do Work-Related

Activities (Physical) form (Tr. 541-546). The doctor opined that Plaintiff was capable of frequently lifting and/or carrying up to twenty pounds and occasionally lifting and/or carrying up to fifty pounds (Tr. 541). Plaintiff could sit for four hours at a time for a total of eight hours during an eight hour workday; stand for thirty minutes at a time for a total of four hours during an eight hour workday; and walk for thirty minutes at a time for a total of four hours during an eight hour workday (Tr. 542). Dr. Barber opined that it was medically necessary for Plaintiff to use a cane to ambulate and that he could only ambulate ten feet without his cane due to severe vertigo (Id.). Plaintiff could never balance, kneel, crawl, and climb ladders or scaffolds, but he could occasionally stoop and crouch (Tr. 544). Dr. Barber opined that Plaintiff could never be exposed to unprotected heights, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat, but he could occasionally be exposed to moving mechanical parts, operating a motor vehicle, humidity, wetness, and vibrations (Tr. 545).

In his administrative decision, the ALJ noted and discussed the examination and opinions of Dr. Barber, stating:

> The undersigned notes that a light residual functional capacity is supported by the new consultative examination and Physical Capacities Evaluation by Alvan Barber, M.D. dated December 9, 2014 (Exhibit 15F). Dr. Barber noted that the claimant did to have any symptoms secondary to diabetes mellitus, hypertension, depression, or anxiety which were all noted to be controlled with medications (Exhibit 15F/3). The claimant noted that he was last under the care of a cardiologist in 2012 and denied chest pain. He reported vertigo with sudden movements. Full muscle and grip strength were noted throughout including the claimant's hands bilaterally (Exhibit l5F/6). Straight leg raising tests were again negative bilaterally (Exhibit 15F/6).
>
> **The undersigned notes that Dr. Barber opined that the claimant could continuously lift and carry 10 pounds; frequently lift and carry 20 pounds; and occasionally lift and**

> carry up to 50 pounds (Exhibit 15F/13); sit for 4 hours at one time or a total of 8 hours during an 8-hour workday; stand for 30 minutes at a time or a total of 4 hours; and walk for 30 minutes at a time or a total of 4 hours (Exhibit 15F/14). He opined that the claimant required a cane for ambulation due to vertigo. He noted that the claimant could use foot or hand controls frequently, bilaterally. He opined that the claimant could not climb ladders/ropes/scaffolds but could occasionally stoop and crouch. He opined that the claimant could never balance, kneel or crawl. He opined that the claimant should not work at unprotected heights, around pulmonary irritants, or extreme heat/cold and could only have occasionally exposure to moving mechanical parts, operating a motor vehicle, humidity/wetness, and vibrations. **The undersigned finds that Dr. Barber's conclusion that the claimant was limited to a reduced range of light exertion is supported by the objective medical evidence.**

(Tr. 28 – emphasis original).

The ALJ later observed:

> **It is also significant that none of the claimant's treating or examining physicians rendered an opinion that is consistent with a finding that the claimant has been unable to perform substantial gainful activity. Therefore, the residual functional capacity from Dr. Barber stands uncontradicted in file and is given great weight (Exhibit 15F).**

(Tr. 29 – emphasis original).

When a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons for the assigned weight. Winschel, 631 F.3d at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)). In evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the

physician treated the claimant, the evidence the physician presents to support the opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. See 20 C.F.R. §§ 404.1527(c), 416.927(c). Here, although Dr. Barber was a consultative physician, the ALJ considered his report and gave his opinions "great weight." (Tr. 29).

Plaintiff argues that the ALJ's decision must be reversed, as Dr. Barber's opinion "clearly conflicts" with the ALJ's RFC assessment, in that Dr. Barber's opinion was more restrictive. Specifically, Plaintiff points to Dr. Barber's opinions that 1) it was medically necessary for Plaintiff to use a cane to ambulate and that he could only ambulate ten feet without his cane (Tr. 542); 2) Plaintiff could never balance, kneel, crawl, and climb ladders or scaffolds, but he could occasionally stoop and crouch (Tr. 544); and 3) Plaintiff could never be exposed to dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat, but he could occasionally be exposed to humidity, wetness, vibrations, and operating a motor vehicle (Tr. 545). As none of these limitations are included in the RFC assessment, Plaintiff claims that the ALJ's decision was not made in accordance with proper legal standards and the assessment of Plaintiff's RFC is not supported by substantial evidence.

The Commissioner concedes that the assessment of Plaintiff's RFC does not include all of the limitations found by Dr. Barber, but argues that reversal is not warranted "because, even if the ALJ had adopted Dr. Barber's opinion in its entirety, Plaintiff still could perform jobs identified by the [vocational expert] and would not be disabled." (Doc. 16 at 11). On review, I agree with the Commissioner.

At the fifth step in the sequential evaluation process, the ALJ must determine whether a claimant can do work which exists in the national economy in significant

numbers, considering the claimant's RFC and his age, education and past work experience. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g), 416.960(c), 416.966. Here, the ALJ relied upon the vocational expert's testimony that an individual with Plaintiff's vocational factors and the limitations reflected in the RFC finding could perform other jobs that exist in significant numbers in the national economy (Tr. 30, 65-66). The ALJ wrote:

> To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as **a blade balancer (DOT#701.687-014; light; SVP 2; 59,833 jobs existing nationally); an egg handler (DOT#529.687-074; light; SVP 2; 11,027 jobs existing nationally); and a marker II (DOT#920.687-126; light; SVP 2; 73,602 jobs existing nationally).**
>
> Pursuant to SSR 00-4p, the undersigned has determined that **the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles**. The undersigned notes that the vocational expert's testimony regarding the sit/stand option was based upon his experience as a workplace counselor and his knowledge of the workplace demands.

(Tr. 30-31 – emphasis added). Although the Commissioner argues that "Plaintiff has not shown the additional limitations Dr. Barber indicated preclude performance of the jobs identified by the [vocational expert]" (Doc. 16 at 12), the burden is on the Commissioner at step five. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10. Here, I find that the Commissioner has carried her burden.

The following limitations were found by Dr. Barber but not included in the ALJ's RFC finding: (1) use of a cane to walk more than ten feet; (2) no balancing, kneeling,

- 8 -

crawling, and climbing ladders or scaffolds; (3) occasionally stooping and crouching; and (4) various environmental limitations (Tr. 26, 542, 544). The issue is whether the failure to include any or all of these limitations in Plaintiff's RFC assessment could change the result in this case. With respect to the use of a cane, the vocational expert testified that all of these jobs had a sit-stand option, and required the use of only one hand (Tr. 65-67). Thus, the vocational expert's testimony is not inconsistent with this limitation. Second, according to the DOT (which the ALJ specifically referenced in his decision), the jobs egg candler and marker II require no balancing, kneeling, crawling, climbing, stooping, or crouching. See Egg Candler, DOT No. 529.687-074, 1991 WL 674753; Marker II, DOT No. 920.687-126, 1991 WL 687992. The identified jobs are therefore not precluded by Plaintiff's postural limitations identified by Dr. Barber.[3] As to Dr. Barber's opinion that Plaintiff could never be exposed to dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat, but he could occasionally be exposed to humidity, wetness, vibrations, and operating a motor vehicle, none of these jobs involves these environmental limitations. See Egg Candler, DOT No. 529.687-074, 1991 WL 674753; Marker II, DOT No. 920.687-126, 1991 WL 687992; Blade Balancer, DOT No. 701.687-014, 1991 WL 678953. Thus, the record affirmatively establishes that the inclusion of all of these limitations in the RFC assessment would not preclude Plaintiff's ability to perform the identified jobs of egg candler and marker II. As those jobs exist in significant numbers according to the vocational expert and as found by the ALJ, any error by the ALJ in failing to explicitly incorporate these limitations into the RFC assessment is harmless. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error analysis in

---

[3] The job blade balancer may require up to occasional kneeling. See Blade Balancer, DOT No. 701.687-014, 1991 WL 678953.

Social Security context); <u>Pennington v. Comm'r of Soc. Sec.</u>, 652 F. App'x 862, 874 (11th Cir. 2016) ("Even if the ALJ had erred in failing to include a fine-manipulation limitation in her hypothetical, the error would have been harmless. In response to questioning by Pennington's counsel, the VE testified Pennington would still be able to perform the ticket-taker job even with a fine-manipulation limitation."); <u>Denomme v. Comm'r, Soc. Sec. Admin.</u>, 518 F. App'x 875, 877 (11th Cir. 2013) ("[w]hen… an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand").

Based upon the foregoing discussion, I conclude that the administrative decision is amply supported and no reversible error is shown.

## Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

(1) The Commissioner's final decision in this case be **AFFIRMED.**

(2) The Clerk be directed to enter judgment accordingly and **CLOSE** the file.

## Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. <u>See</u> 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on August 14, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record
    Any Unrepresented Parties